**U**NITED **S**TATES **D**ISTRICT **C**OURT
**M**IDDLE **D**ISTRICT **O**F **F**LORIDA
**O**RLANDO **D**IVISION

JASON DARNELL,

       Plaintiff,

v.                                               Case No:   6:15-cv-999-Orl-37TBS

ALEJANDRO RIVERA; ALPHONSO
WILLIAMS; JOHN DOES 1–5; DAVID
OGDEN; and the TOWN OF
WINDERMERE,

       Defendants.

---

**ORDER**

This matter is before the Court on the following:

1. Defendants Town of Windermere and David Ogden's Motion to Dismiss Plaintiff's Complaint and Supporting Memorandum of Law (Doc. 18), filed August 18, 2015;

2. Plaintiff's Memorandum of Law in Opposition to Defendants Town of Windermere and David Ogden's Motion to Dismiss (Doc. 21), filed August 24, 2015;

3. Motion of Defendant, Alejandro Rivera, to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 24), filed September 6, 2015;

4. Plaintiff's Memorandum of Law in Opposition to Defendant Alejandro Rivera's Motion to Dismiss (Doc. 25), filed September 9, 2015;

5. Defendant Alphonso Williams' Motion to Dismiss (Doc. 29), filed September 14, 2014; and

6. Plaintiff's Memorandum of Law in Opposition to Defendant Alphonso Williams' Motion to Dismiss (Doc. 30), filed September 16, 2015.

## BACKGROUND

Jason Darnell served as a police officer with the Windermere Police Department ("**WPD**") from September 2008 until his suspension in November 2012. (*See* Doc. 1 ("**Complaint**").) According to the allegations of the Complaint—which are accepted as true for the purpose of resolving the pending motions to dismiss, *see Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)—a leadership vacuum developed within the WPD following the departure of Police Chief Daniel Saylor. (*Id.* ¶¶ 17–18.) Consequently, an intra-departmental rivalry and unsavory practices emerged, in which "hostile factions . . . competed for power within [the WPD]." (*Id.*) Those practices included the filing of frivolous internal affairs complaints against rival officers to remove them from the WPD. (*Id.* ¶20.)

In the summer of 2012, Darnell and two other officers informed members of the Windermere Town Council (the "**Town Council**") about the emergence of unethical practices at the WPD. (*Id.* ¶ 19.) In retaliation, newly hired officer and Plaintiff's trainee Alejandro Rivera ("**Officer Rivera**") conspired with several unidentified individuals ("**John Does 1–5**")[1] to have Plaintiff removed from the WPD. (*Id.* ¶¶ 16, 21.) To facilitate this conspiracy, on November 8, 2012, Officer Rivera submitted a false internal affairs complaint to then-interim police chief, Ted Brown, alleging Plaintiff had racially profiled black minorities and ordered Officer Rivera to conduct three traffic stops without probable cause. (*Id.* ¶ 22.) In response, Ted Brown contacted the Florida Department of Law

---

[1] Plaintiff represents that he is presently without information as to the identities of John Does 1–5; he plans to amend the Complaint and identify these individuals upon obtaining further information and evidentiary support. (Doc. 1, ¶ 12.)

2

Enforcement ("**FDLE**"), which began investigating the matter. (*Id.* ¶ 23.) FDLE Agent Alphonso Williams ("**Agent Williams**")—Plaintiff's former co-worker at the Altamonte Springs Police Department ("**APD**")—became the lead agent assigned to the investigation. (*Id.* ¶ 24.)

While employed together at the APD, Plaintiff and Agent Williams did not get along and unresolved tension developed between the two. (*Id.* ¶ 25.) "Williams did not disclose this conflict of interest to his chain of command at the FDLE," and "proceeded with his investigation with an 'axe to grind' against Plaintiff." (*Id.* ¶¶ 24–25.) To justify charging Plaintiff with criminal misconduct, Williams deliberately ignored obvious discrepancies in the evidence collected during his investigation and erroneously concluded that Plaintiff had committed a felony. (*Id.* ¶¶ 27, 33–34.) As a result, on April 12, 2013, current WPD chief of police, David Ogden, ordered Plaintiff to appear at the Windermere police station, where Agent Williams promptly arrested him. (*Id.* ¶¶ 30–31.)

Agent Williams subsequently submitted an official police report to the State Attorney, and Plaintiff was charged with "three counts of official misconduct and two counts of threatening a public servant with the intent to influence a public duty." (*Id.* ¶¶ 28, 59.) Sometime thereafter, the Orange County Sheriff's Office ("**OCSO**") conducted an independent internal investigation, which revealed that Officer Rivera fabricated the allegations against Plaintiff ("**OCSO Findings**") (*Id.*, ¶ 35.) After the OCSO Findings were presented to the State Attorney, all charges against Plaintiff were dropped, and the OCSO cleared Plaintiff of all wrongdoing. (*Id.*) Plaintiff was briefly reinstated as a WPD officer, but he was unable to serve as a functional member due to the reputational harm that had occurred. (*Id.* ¶¶ 36–39.)

3

Based on the foregoing, Plaintiff filed a six-count Complaint asserting the following state and federal claims against Agent Williams, Officer Rivera, and Officer Ogden (collectively, "**the Officers**") in their individual and official captivities: (1) malicious prosecution against Officer Rivera under 42 U.S.C. § 1983 and state law ("**Count I**"); (2) civil conspiracy against Officer Rivera and John Does 1–5 under state law ("**Count II**"); (3) malicious prosecution against Agent Williams under § 1983 and state law ("**Count III**"); (4) false arrest/false imprisonment against Agent Williams under § 1983 and state law ("**Count IV**"); and (5) violation of procedural due process against Officer Ogden under § 1983 and state law ("**Count VI**"). (*See id.* ¶¶ 40–72, 83–95).[2] Pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Plaintiff also asserts a municipal liability claim against the Town of Windermere ("**the Town**") ("**Count V**"). (*See id.* ¶¶ 73–82.)

The Officers move for dismissal of the Plaintiff's claims on a variety of grounds, specified below.[3] (Docs. 18, 24, 29.) The Town also seeks dismissal of Count V on grounds that the Complaint fails to allege sufficient facts to state a cause of action for municipal liability. (*See* Doc. 18.) (*See* Docs. 18, 24, 29). Plaintiff responded (Docs. 21, 25, 30), and the Motions are now ripe for adjudication.

---

[2] Plaintiff correctly asserts that the Court may exercise original jurisdiction over his federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over his state law claims pursuant to § 1367. (*See* Doc. 1, ¶¶ 5–6.)

[3] With respect to Count IV, Officer Williams has filed an answer to Plaintiff's claim for false arrest (*see* Doc. 28 at 6–7); however, he moves to dismiss Plaintiff's claim for false imprisonment (*see* Doc. 29).

**STANDARDS**

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint "fails to state a claim to relief that is plausible on its face," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009). When considering a Rule 12(b)(6) motion, courts must limit their consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Courts also must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true. *Tellabs*, 551 U.S. at 323. After disregarding allegations that "are not entitled to the assumption of truth," the court must determine whether the complaint includes "factual content" sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

**DISCUSSION**

**I.     Duplicative Claims**

   **A.     Federal Official Capacity Claims**

In Counts I, III, IV, and VI, Plaintiff asserts federal claims against the Officers in their official capacities. (*See* Doc. 1, pp. 12–27 (asserting § 1983 claims for malicious prosecution, false arrest/false imprisonment, and violation of procedural due process).) Officers Rivera and Ogden contend that the Court should dismiss Plaintiff's federal official capacity claims because they are duplicative of his claim against the Town. (Doc. 18, pp. 11–12; Doc. 24, p. 4.) The Court agrees.

Plaintiff's federal official capacity claims against Officers Ogden and Rivera are simply another way of bringing a claim against the Town, and would serve no purpose but to confuse the jury. *See Busby v. City of Orlando*, 931 F.2d 764, 766 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."). Accordingly, to the extent that Plaintiff intends to assert Counts I and VI against Officers Rivera and Ogden in their official capacities pursuant to § 1983, Counts I and VI are due to be dismissed with prejudice.

On similar grounds, Agent Williams argues that the Court should dismiss any federal claims asserted against him in his official capacity as such claims constitute suit against the FDLE, a non-party to this action. (Doc. 29, pp. 3–5.) Plaintiff concedes to such dismissal. (*See* Doc. 30, p. 5.) Therefore, the Court finds that Counts III and IV are due to be dismissed with prejudice to the extent they are asserted against Agent Williams in his official capacity pursuant to § 1983.

### B.   State Official Capacity Claims

In Counts I, II, III, and IV, Plaintiff asserts state law claims against Officer Rivera and Agent Williams in their official capacities. (*See* Doc. 1, pp. 12–19 (asserting state law claims for malicious prosecution, civil conspiracy, and false arrest/false imprisonment).) Officer Rivera and Agent Williams contend that Plaintiff's state official capacity claims are barred by Florida Statute § 768.28(9)(a), which provides that "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed . . . in bad faith or with malicious purpose. (Doc. 24, pp. 4–6; Doc. 29, pp. 5–7.)

However, Florida Statute § 768.28(9)(a) does not immunize governmental entities from liability for intentional torts committed in the course and scope of employment where the conduct or act forming the basis of the intentional tort does not involve bad faith or malicious purpose, and was not committed in a manner exhibiting a willful disregard of human rights, safety, or property. *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1121 (Fla. 4th DCA 1987). Here, Plaintiff's state law claims for civil conspiracy and false arrest/false imprisonment are intentional torts that "do not inherently or necessarily involve [the] elements which would activate [sovereign] immunity." *Id.* at 1124 (Fla. 4th DCA 1987). Therefore, Plaintiff may plead alternative state law claims in Counts II and IV on the basis of individual and official liability.

Plaintiff's claims for malicious prosecution in Counts I and III, however, cannot be pled in the alternative because malice is an inherent element of a malicious prosecution claim, *Andrew Nguyen MD PA v. Estate of Carlisle*, No. 1:04-cv-00026-MP-AK, 2007 WL 1560149, at *1 (N.D. Fla. May 23, 2007), and municipalities cannot be held liable for acts committed by their officers "in bad faith or with malicious purpose." *See Johnson v. State of Florida's Dep't of Health and Rehabilitative Servs.*, 695 So.2d 927, 930 (Fla. App. 2nd Dist.1997). As stated above, a suit against a government officer in his official capacity "is simply a suit against the relevant governmental entity." *See Brown v. Neuman*, 188 F.3d 1289, 1290 n.1 (11th Cir.1999). Therefore, allowing Plaintiff's state law claims for malicious prosecution to go forward against Officer Rivera and Agent Williams would effectively contravene the provisions of 768.28(9)(a). Accordingly, to the extent that Plaintiff asserts state law claims for malicious prosecution in Counts I and III against Officer Rivera and Agent Williams in their official capacities, those claims are due to be dismissed

with prejudice.

## II.    Legal Sufficiency of Plaintiff's Claims

In addition to their arguments regarding the duplicity of Plaintiff's state and federal claims, the Officers and the Town contend that Plaintiff fails to sufficiently plead the claims brought against them. (*See* Docs. 18, 24, 29.) The Court will address each in turn.[4]

### A.    Counts I and III: Malicious Prosecution Claims against Officer Rivera and Agent Williams in their Individual Capacities

Officer Rivera and Agent Williams argue that the factual allegations of the Complaint are insufficient to state a cause of action for malicious prosecution under state or federal law. (Doc. 24, pp. 6–7; Doc. 29, pp. 7–15.) Particularly, Officer Rivera and Agent Williams argue that Plaintiff fails to plead facts suggesting that they were the legal cause of the State's decision to prosecute Plaintiff. (*Id.*) The Court disagrees

To state a § 1983 claim for malicious prosecution, Plaintiff must adequately allege a Fourth Amendment violation of his right to be free from an unreasonable seizure, as well as the elements of the common law tort of malicious prosecution, which require Plaintiff to plead the following:

> (1) an original judicial proceeding against the [] plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

*See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004).

---

[4] The Court will not discuss duplicative claims that are due to be dismissed. *See supra* Section I.

8

Plaintiff alleges that Officer Rivera's submission of a false internal affairs complaint to the WPD and Agent Williams's submission of an official police report to the State Attorney resulted in the commencement of judicial proceedings against him and the deprivation of his liberty. (Doc. 1, ¶¶ 40–48, 57–65.) Specifically, Plaintiff alleges that as a result of Rivera and William's malicious conduct, he was charged with multiple felonies and required to post a "considerable bond," which included travel restrictions and a requirement that Plaintiff appear "on demand." (*Id.* ¶¶ 38, 47, 62; Doc. 30 at pp. 7–8.) Additionally, notwithstanding the State Attorney's ultimate decision to drop all charges against him, Plaintiff alleges that he suffered damages. (*Id.* ¶¶ 48, 65.) These allegations are sufficient to allow Plaintiff to proceed with his state and federal claims for malicious prosecution against Agent Williams and Officer Rivera in their individual capacities. *See Williams v. Miami–Dade Police Dep't*, 297 F. App'x. 941, 947 (11th Cir. 2008).

### B.    Count II: Civil Conspiracy Claim Against Officer Rivera and John Does 1–5 in their Individual and Official Capacities

To state a claim for civil conspiracy under Florida law, a plaintiff must allege: "[1] an agreement between two or more parties, [2] to do an unlawful act or to do a lawful act by unlawful means, [3] the doing of some overt act in pursuance of the conspiracy, and [4] damage to plaintiff as a result of the acts done under the conspiracy." *Eagletech Comm., Inc. v. Bryn Mawr Inv. Grp., Inc.*, 79 So.3d 855, 863 (Fla. 4th DCA 2012). Officer Rivera contends that the Court should dismiss Plaintiff's claim for civil conspiracy because Plaintiff failed to make "particularized allegations that a conspiracy exists." (Doc. 24 at pp. 7–10.) Officer Rivera also argues that Plaintiff's claim is barred by the intra-corporate doctrine because employees of a single corporate entity are legally incapable of conspiring together. (Doc. 24 at pp. 9–10.) The Court finds this argument unpersuasive for three

reasons.

First, Plaintiff brings his civil conspiracy claim under state law, rather than federal law, therefore particularized allegations are not required. *See Lobo Capital Partners, LLC v. Forte*, No. 8:12-cv-2029-T-33AEP, 2013 WL 1279009, at *3 (M.D. Fla. Mar. 28, 2013) (noting that a state law civil conspiracy claim is only subject to the standards set forth in Fed. R. Civ. P. 8(a)). Second, Plaintiff has provided several factual allegations suggesting that Rivera and Defendants John Does 1–5 conspired to have a false complaint filed against him and that such acts caused Plaintiff to suffer damages, including reputational harm. (*See* Doc. 1, ¶¶ 20–22, 49–56).

Third, if Plaintiff's allegations are assumed to be true, they are not barred by the intra-corporate doctrine because an exception is carved out for employees with "a personal stake in the activities that are separate and distinct from the [entity]'s interest." *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991). Plaintiff's claim for civil conspiracy fits squarely within this exception as he alleges that Officer Rivera and John Does 1–5 acted in their own personal interest, and not in the interest of the WPD, when they fabricated evidence to support Plaintiff's prosecution and removal from the WPD. (Doc. 1 ¶¶ 17–22, 49–52.) Based on the foregoing, the Court finds Plaintiff has adequately pled a claim for civil conspiracy. Officer Rivera's motion to dismiss Plaintiff's civil conspiracy claim is due to be denied.

**E.     Count IV: False Imprisonment Claim against Agent Williams in his Official and Individual Capacity**

Agent Williams argues that Plaintiff's § 1983 claim for false imprisonment be dismissed because Plaintiff fails to state a claim upon which relief can be granted. (Doc. 29 at pp. 11–13.) Specifically, Agent Williams argues that dismissal is warranted because

Plaintiff fails to allege specific facts regarding the length of his detention. (*Id.* at 12.) This argument is without merit.

To state a § 1983 claim for false imprisonment, Plaintiff must adequately allege the elements of common law false imprisonment and establish that the imprisonment resulted in a violation of his due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996.) The elements of common law false imprisonment consist of: "(1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or 'color of authority' and (4) which is unreasonable and unwarranted under the circumstances." *Montejo v. Martin Mem'l Med. Ctr., Inc.*, 935 So. 2d 1266, 1268 (Fla. 4th DCA 2006).

In his Complaint, Plaintiff alleges that: (1) Agent Williams arrested him without probable cause (Doc. 1 ¶¶ 66–71); (2) Agent Williams knew or should have known that he lacked probable cause to arrest him due glaring discrepancies in the evidence gathered during the investigation (*id.* ¶¶ 27, 34); (3) Agent Williams disregarded such inconsistencies to justify charging Plaintiff with a criminal offense (*id.* ¶ 34); and (5) as a result, Plaintiff was detained and had to post a considerable bond (*Id.* ¶¶ 31, 66–72; Doc. 30 at pp. 16–21). Notably absent from Agent Williams argument that the law requires an individual to be detained for a specific period of time to constitute false imprisonment is citation to any binding authority. Persuasive authority in other circuits suggests otherwise. *See Hill v. Rowland*, 474 F.2d 1374, 1380 (4th Cir. 1973) ("An improper or illegal arrest and a period of detention, of whatever length, may carry with it an implication of false imprisonment."). At this juncture Plaintiff has pled sufficient facts to support his claim for false imprisonment.

### F.  Count V: Municipal Liability (*Monell*) Claim Against the Town of Windermere

A municipality cannot be held liable under § 1983 for an officer's violations of an individual's Fourth Amendment rights based merely on "vicarious liability." *See Laster v. City of Tampa Police Dep't*, 575 F. App'x 869, 872 (11th Cir. 2014). Rather, a municipality is liable for such violations only if the municipality adopted policies and customs that were the "moving force" behind the officer's violations of Plaintiff's rights. *See City of Canton, Ohio v. Harris*, 109 U.S. 378, 385 (1989) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In other words, the very "execution of the government's policy or custom . . . [must] inflict the [constitutional] injury." *Id.* (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987)). Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. *Okla. City v. Tuttle*, 471 U.S. 808, 823–824 (1985); *see also Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310–11 (11th Cir. 2011).

Here, Plaintiff alleges that the WPD—an agent and subdivision of the Town— "instituted, fostered, and maintained" a custom or practice of permitting the filing of "frivolous . . . internal affairs complaints, which were often escalated into criminal investigations, to denounce and/or disgrace police officers." (Doc. 1, ¶ 77.) However, absent from the Complaint are any facts to support this conclusory allegation. Notably, the Complaint describes no other instances in which officers filed frivolous internal affairs complaints aside from Officer Rivera's complaint. This event—standing alone—cannot support a finding that the WPD had adopted a custom or policy. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy attributable to a municipal

policymaker"). Consequently, the Court finds that the Complaint does not sufficiently state a claim against the Town for municipal liability based on a custom or policy adopted by the WPD. Count V is due to be dismissed without prejudice.

### G.   Count VI: Procedural Due Process Claim Against Officer Ogden in his Individual Capacity

Finally, Plaintiff asserts that Officer Ogden violated his right to due process by denying him a name-clearing hearing before or after his termination. (Doc. 1, ¶¶ 83–95.) The Eleventh Circuit has held that "when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). However, a procedural due process claim can exist only if no adequate state remedies are available. *Id.* at 1331. Therefore, if adequate state remedies were available to Plaintiff, but he failed to take advantage of them, he cannot rely on that failure to claim that the state deprived him of procedural due process." *Id.*

Officer Ogden argues that Plaintiff's procedural due process claim should be dismissed because he failed to*, inter alia,* pursue available state court remedies, particularly, remedies provided under Florida Statutes § 112.532, the Law Enforcement Officers' Bill of Rights ("**Bill of Rights**"). In response, Plaintiff argues that the Bill of Rights does not afford him an adequate state remedy because it only provides for an injunction against an investigating officer, and Plaintiff's investigation concluded well before a remedy was necessary. (Doc. 21, pp. 10–14). The Court agrees that Count VI is due to be dismissed, but not necessarily for the reason provided.[5]

---

[5] "Prior to 2009, a law enforcement officer or correctional officer who was injured by his or her employing agency's failure to comply with the Bill of Rights could petition the

13

"Florida circuit courts routinely review—sometimes by way of a complaint for a writ of mandamus—the decisions of Florida sheriffs to terminate deputies, both in permanent positions and in probationary positions." *See Sammons v. Cameron*, No. 2:04-cv-161-FTM29DNF, 2005 WL 1027509, at *4 (M.D. Fla. Apr. 15, 2005). Because Plaintiff did not allege that he exhausted these potential state court remedies, he has failed to state a claim for violation of procedural due process. *See Cotton*, 216 F.3d at 1330–31 (holding that the plaintiff failed to state a claim for procedural due process where he could have sought a writ of mandamus directing the defendants to hold a name-clearing hearing). Accordingly, Count VI is due to be dismissed without prejudice; however Plaintiff will be afforded an opportunity to replead.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants Town of Windermere and David Ogden's Motion to Dismiss (Doc. 18) is **GRANTED IN PART and DENIED IN PART**.

    a. Count V is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

    b. To the extent that Plaintiff asserts Count VI against Defendant David Ogden in his official capacity pursuant to 42 U.S.C. § 1983, Count VI is **DISMISSED WITH PREJUDICE.**

---

circuit court . . . to 'compel the performance of the duties imposed by [the Bill of Rights].'" *Fraternal Order of Police, Gator Lodge 67 v. City of Gainesville*, 148 So. 3d 798, 802 (1st Fla. DCA 2014). However, "effective July 1, 2009, this broad judicial remedy was limited to the 'removal of the investigator from further involvement with the investigation of the officer.'" *Id.* Therefore, the Court cannot reasonably conclude that the Bill of Rights would have provided Plaintiff with an adequate state remedy because Plaintiff suggests that Officer Williams' investigation concluded before any resulting reputational harm.

      c.    To the extent that Plaintiff asserts Count VI against Defendant David Ogden in his individual capacity, Count VI is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

      d.    In all other respects, the Motion is **DENIED**.

2.    Motion of Defendant Alejandro Rivera to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. 24) is **GRANTED IN PART and DENIED IN PART.**

      a.    To the extent that Plaintiff asserts Count I against Defendant Alejandro Rivera in his official capacity pursuant to 42 U.S.C. § 1983 and state law, Count I is **DISMISSED WITH PREJUDICE**.

      b.    In all other respects, the Motion is **DENIED**.

3.    Defendant Agent Williams' Motion to Dismiss (Doc. 29) is **GRANTED IN PART and DENIED IN PART.**

      a.    To the extent that Plaintiff asserts Count III against Defendant Alphonso Williams in his official capacity pursuant to 42 U.S.C. § 1983 and state law, Count III is **DISMISSED WITH PREJUDICE**.

      b.    To the extent that Plaintiff asserts Count IV against Defendant Alphonso Williams in his official capacity pursuant to 42 U.S.C. § 1983, Count IV is **DISMISSED WITH PREJUDICE.**

      c.    In all other respects, the Motion is **DENIED.**

4.    On or before Monday, **February 8, 2016**, Plaintiff may file an Amended Complaint consistent with the strictures of this Order.

**DONE** and **ORDERED** in Orlando, Florida on January 26, 2016.



ROY B. DALTON JR.
United States District Judge

Copies furnished to:
Counsel of Record