**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JASON DARNELL,

        Plaintiff,

v.    Case No: 6:15-cv-999-Orl-37TBS

ALEJANDRO RIVERA; ALPHONSO WILLIAMS; JOHN DOES 1–5; DAVID OGDEN; and the TOWN OF WINDERMERE,

        Defendants.

---

**ORDER**

This matter is before the Court on the following:

1. Defendants Town of Windermere and David Ogden's Motion to Dismiss Plaintiff's First Amended Complaint and Supporting Memorandum of Law (Doc. 56), filed March 30, 2016; and

2. Plaintiff's Memorandum of Law in Opposition to Defendants Town of Windermere and David Ogden's Motion to Dismiss First Amended Complaint (Doc. 57), filed April 13, 2016.

**BACKGROUND[1]**

Jason Darnell served as a police officer with the Windermere Police Department ("**WPD**") from September 2008 until his suspension in November 2012. (*See* Doc. 48 ¶ 15.) In 2012, Plaintiff was assigned as a Field Training Officer to newly hired officer,

---

[1] The following facts are taken from Plaintiff's Amended Complaint (Doc. 48), taken as true, and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Alejandro Rivera ("**Officer Rivera**"). Around that time, a leadership vacuum developed within the WPD due to the departure of Police Chief Daniel Saylor ("**Police Chief Saylor**"), which precipitated the emergence of intra-departmental rivalry and unsavory practices. (*Id.* ¶¶ 17–18.) One of those practices included the filing of frivolous internal affairs complaints against rival officers in an attempt to remove them from the WPD. (*Id.* ¶ 26.)

In the summer of 2012, Plaintiff and fellow WPD officers Robert German and Ryan Miller approached the Windermere Town Council (the "**Town Council**") and informed its members about the emergence of unethical practices within the WPD. (*Id.* ¶ 25.) In retaliation, Officer Rivera conspired with several unidentified individuals ("**John Does 1–5**") to have Plaintiff removed from the WPD. (*Id.* ¶ 27.) To facilitate this conspiracy, on November 8, 2012, Officer Rivera submitted a false internal affairs complaint to then-interim police chief, Ted Brown, alleging that Plaintiff had racially profiled black minorities and ordered Officer Rivera to conduct three traffic stops without probable cause. (*Id.* ¶ 28.) In response, Ted Brown contacted the Florida Department of Law Enforcement ("**FDLE**"), which began investigating the matter. (*Id.* ¶ 29.) FDLE Agent Alphonso Williams ("**Agent Williams**")—Plaintiff's former co-worker at the Altamonte Springs Police Department ("**APD**")—became the lead agent assigned to the investigation. (*Id.* ¶ 30.)

Plaintiff and Agent Williams did not get along while employed at APD, and developed unresolved tension. Thus, Williams "proceeded with his investigation with an 'axe to grind.'" (*Id.* ¶¶ 30–31.) To justify charging Plaintiff with criminal misconduct, Williams deliberately ignored obvious discrepancies in the evidence collected during his

investigation and erroneously concluded that Plaintiff had committed a felony. (*Id.* ¶¶ 32–33.) As a result, on April 12, 2013, current WPD chief of police, David Ogden ("**Officer Ogden**"), ordered Plaintiff to appear at the Windermere police station, where Agent Williams promptly arrested him. (*Id.* ¶¶ 36–37.)

Agent Williams subsequently submitted an official police report to the State Attorney, and Plaintiff was charged with "three counts of official misconduct and two counts of threatening a public servant with the intent to influence a public duty." (*Id.* ¶¶ 34, 65.) Sometime thereafter, the Orange County Sheriff's Office ("**OCSO**") conducted an independent internal investigation, which revealed that Officer Rivera fabricated the allegations against Plaintiff ("**OCSO Findings**") (*Id.* ¶ 41.) After the OCSO Findings were presented to the State Attorney, all charges against Plaintiff were dropped, and the OCSO cleared Plaintiff of all wrongdoing. (*Id.*) Plaintiff was briefly reinstated as a WPD officer, but he was unable to serve as a functional member of the WPD due to the reputational harm that had occurred. (*Id.* ¶ 42.)

Armed with these allegations, Plaintiff filed a six-count Complaint, asserting several state and federal claims against Agent Williams, Officer Rivera, and Officer Ogden (collectively, "**the Officers**"). The Officers moved for dismissal of Plaintiff's initial Complaint (Docs. 18, 24, 29), which the Court granted in part (Doc. 40.) Plaintiff has now filed an Amended Complaint asserting claims for: (1) malicious prosecution against Officer Rivera in his individual capacity under 42 U.S.C. § 1983 and state law (Count I); (2) civil conspiracy against Officer Rivera, in his individual and official capacity, and John Does 1–5 under state law (Count II); (3) malicious prosecution against Agent Williams in his individual capacity under § 1983 and state law (Count II"); (4) false arrest/false

imprisonment against Agent Williams, in his individual capacity under 42 U.S.C. § 1983, and in his individual and official capacity under state law (Count IV); (5) municipal liability against the Town of Windermere ("**the Town**") (Count V); and (6) violation of procedural due process against Officer Ogden in his individual and official capacity under § 1983 and state law (Count VI). (*See* Doc. 48.).

On March 30, 2016, the Town and Officer Ogden filed a motion to dismiss Counts V and VI of the Amended Complaint (Doc. 56), to which Plaintiff responded (Doc. 57). The Motion is now ripe for adjudication.[2]

## STANDARDS

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint "fails to state a claim to relief that is plausible on its face," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009). When considering a Rule 12(b)(6) motion, courts must limit their consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Courts also must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true. *Tellabs*, 551 U.S. at 323. After disregarding allegations that "are not entitled to the assumption of truth," the court must determine whether the complaint includes "factual content" sufficient to "draw the reasonable inference that the defendant is liable for the

---

[2] Officer Rivera and Agent Williams have filed answers to the Amended Complaint. (Docs. 49, 52).

misconduct alleged." *Iqbal*, 556 U.S. at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

**DISCUSSION**

**I.   Municipal Liability (*Monell*) Claim Against the Town of Windermere (Count V)**

Town contends that "Plaintiff's Complaint regarding municipal liability under *Monell* fails in that it does not properly allege a pattern or practice that is permanent or widespread."

"[T]o impose § 1983 liability on a municipality, a plaintiff must [allege]: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A municipality is liable for such violations only if the municipality adopted policies and customs that were the "moving force" behind the officer's violations of Plaintiff's rights. *See City of Canton, Ohio v. Harris*, 109 U.S. 378, 385 (1989) (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Thus, '[a] single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality.'" *Marantes v. Miami-Dade Cty.*, No. 15-13333, 2016 WL 1696838, at *6 (11th Cir. Apr. 28, 2016) (*quoting Craig v. Floyd Cty.*, 643 F.3d 1306, 1311 (11th Cir. 2011). Instead, "[a] pattern of similar constitutional violations ... is 'ordinarily necessary.'" *Connick v. Thompson*, 563 U.S. 51, 74 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff does not allege the existence of an official policy within the WPD; rather, he asserts that the WPD had an unofficial custom or practice of "filing unsubstantiated

5

and false internal affairs complaints, which were then escalated to the status of criminal investigations into alleged 'wrongdoing.'" (Doc. 48 ¶¶ 26, 83; Doc. 57, p. 2.) In support of this theory, Plaintiff vaguely describes instances of police misconduct that primarily relate to the actions of former Police Chief Saylor. (*See* Doc. 48 ¶¶ 19–22). Notably, however, none of the alleged instances of police misconduct involve the "filing false and unsubstantiated internal affairs complaints," nor do these incidents bear any factual similarity to the violation allegedly suffered by Plaintiff. Hence, the Amended Complaint is devoid of sufficient facts plausibly demonstrating that the WPD had a widespread custom or practice of filing unsubstantiated and false internal affairs complaints. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (holding that the plaintiff failed to show a custom because he did not identify "factual situations that [were] substantially similar to the case at hand"); *see also Connick v. Thompson*, 563 U.S. 51, 63 (2011) (explaining that incidents that are dissimilar to the violation at issue cannot establish a pattern of violations that would provide notice to the municipality and the opportunity to conform to constitutional dictates).

Indeed, aside from the complaint that Officer Rivera filed against Plaintiff, the Amended Complaint provides no facts showing any other occasions where WPD officers filed frivolous internal affairs complaints against their counterparts in an attempt to have them removed from the department. As the Court previously explained, "[t]his event—standing alone—cannot support a finding that the WPD had adopted a custom or policy." (Doc. 40, p. 12 (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)). Because Plaintiff is still unable to state a claim for municipal liability against the Town, the Court finds that Count V is due to be dismissed with prejudice.

6

## II.  Procedural Due Process Claim Against Officer Ogden (Count VI)

Turning to Count VI, Plaintiff claims a liberty interest in his reputation in connection with his employment as a WPD officer, as recognized by the Florida legislature and codified in the Law Enforcement Officer's Bill of Rights ("**Bill of Rights**"), Florida Statutes, § 112.532. (*Id.* ¶¶ 92–93.) Plaintiff further alleges that by failing to give him a meaningful opportunity to clear his name, either before or after his termination, Officer Ogden violated numerous portions of the Bill of Rights and deprived Plaintiff of his liberty interests without procedural due process. (*Id.* ¶ 101.) Officer Ogden argues that Count VI should be dismissed with prejudice due to Plaintiff's failure to allege that state law does not provide an adequate remedy for his alleged procedural deprivation. (Doc. 56). The Court agrees.

The Eleventh Circuit has held that "when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). However, "in procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Accordingly, if adequate state remedies were available, but the plaintiff did not avail himself of them, then he "cannot rely on that failure to claim that the state deprived him of procedural due process." *Cotton*, 216 F.3d at 1331.

In his response, Plaintiff spends an inordinate amount of time arguing that the scope of the remedy for violations of the Bill of Rights is considerably more limited than it was prior to 2009 and "Plaintiff could not, therefore, draw succor from the provisions of

the [Bill of Rights] to force Chief Ogden to afford [him] a meaningful opportunity to cleanse his reputation once criminal charges were dismissed." (Doc. 57, p. 12.)

However, whether the Bill of Rights provides Plaintiff with an adequate remedy is not dispositive, as the Bill of Rights is only one remedial process by which an officer may remedy violations of his due process rights. *See* Fla. Sta. §§ 112.532, 112.534 (2009). Indeed, "Florida law provides, through certiorari review by Florida courts, an adequate means for review of a public employee's termination of employment." *Dingle v. City of Coleman*, No. 5:10-cv-53-OC-10GRJ, 2010 WL 4366886, at *4 (M.D. Fla. Oct. 28, 2010) (citing *McKinney v. Pate*, 20 F.3d 1550, 1563–64 (11th Cir. 1994).[3] Furthermore, as the Court noted in its January 26, 2016 Order, "Florida circuit courts routinely review—sometimes by way of a complaint for a writ of mandamus—the decisions of Florida sheriffs to terminate deputies, both in permanent positions and in probationary positions." (Doc. 40, p. 14 (quoting *Sammons v. Cameron*, No. 2:04-cv-161-FTM29DNF, 2005 WL 1027509, at *4 (M.D. Fla. Apr. 15, 2005)). Nonetheless, Plaintiff wholly fails to include in his Amended Compliant any facts demonstrating that he pursued or exhausted these state remedies.

As state law provides adequate remedies for the violations allegedly suffered by Plaintiff, he has failed to adequately state a claim for violation of his procedural due process rights. *See McKinney*, 20 F.3d at 1565 (finding that a plaintiff could not claim that he was deprived of procedural due process "[s]ince the Florida courts possess the power to remedy any deficiency in the process by which [the plaintiff] was terminated"); *see also*

---

[3] *See e.g.*, *Park v. City of W. Melbourne*, 769 So. 2d 397, 398 (Fla. 5th DCA 2000)*; Grice v. City of Kissimmee*, 697 So. 2d 186 (Fla. 5th DCA 1997).

*Cotton*, 216 F.3d at 1330–31 (holding that the plaintiff failed to state a claim for procedural due process where he could have sought a writ of mandamus directing the defendants to hold a name-clearing hearing). Accordingly, Count VI is also due to be dismissed until such time as Plaintiff exhausts his state law remedies.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendants Town of Windermere and David Ogden's Motion to Dismiss (Doc. 56) is **GRANTED**.

2. Counts V is **DISMISSED WITH PREJUDICE** for failure to state a claim.

3. Count VI is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may not reassert this claim until he has exhausted his state law remedies.

4. The Clerk is **DIRECTED** to terminate Defendants Town of Windermere and David Ogden as Defendants in this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on May 25, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record